# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| FIRST BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:12-cv-809 |
| | ) | |
| GIBRALTAR PRIVATE BANK & | ) | |
| TRUST COMPANY | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

The matter is before the Court on Gibraltar Private Bank & Trust Company's ("Defendant") Motion to Dismiss or alternative Motion to Transfer Venue. (Docket Entry 10.) First Bank ("Plaintiff") opposes the Motion. (Docket Entries 16, 20.) For the following reasons, it is recommended that Defendant's motion to dismiss be granted.

## I. Background

On November 22, 2006, Beaverdam Land Conservancy, LLC executed a Promissory Note in favor of the Bank of Asheville for $9,872,000.00 as part of a loan transaction. (Complaint ¶ 3, Docket Entry 6.) To secure the loan, a Deed of Trust was recorded and encumbered multiple properties in North Carolina. (*Id.* at ¶ 4.) Additionally, the Bank of Asheville sold a $5,000,000.00 participation in the loan to Defendant, consummated by a Participation Agreement. (*Id.* at ¶ 5.) Paragraph 5 of this agreement is the crux of the dispute. It reads as follows:

> The Bank reserves the sole right to enforce the obligations of the Borrower, but so long as the Participant's share on the loan, together with any shares the

> Participant may have in any other loans made by the Bank to the same Borrower, is more than 50% thereof in the aggregate, then the Bank will take such action as may be requested by the Participant to enforce the terms of, or to exercise the rights given in, any loan agreement or note or other instrument relating to or evidencing the loan or the security thereof, provided the Participant first indemnifies the Bank to the Bank's satisfaction against the Participant's pro rata share of any expense or liability which the Bank may incur in so doing.

(Participation Agreement ¶ 5, Compl., Ex. 3, Docket Entry 6-3.)

On January 11, 2011, Plaintiff bought the assets of the Bank of Asheville, whose rights and obligations were then assigned to Plaintiff. (Compl. ¶ 4, Docket Entry 6.) In February 2011, Beaverdam defaulted on the note, causing Plaintiff, with consent of Defendant, to request that the trustee institute foreclosure proceedings on the Deed of Trust. (*Id.* at ¶ 8.) On January 23, 2012, the Substitute Trustee held an authorized public sale of the encumbered properties, and Plaintiff, as the only bidder, bought the property with a credit bid of $4,680,000.00. (*Id.* at ¶ 10.) Defendant consented to the sale. (*Id.* at ¶ 11.)

As of July 21, 2012, Plaintiff claims that it has incurred $310,982.44 in expenses for "services related to the enforcement of the obligations" under the promissory note and deed of trust. (*Id.* at ¶ 14.) Under the participation agreement, Defendant has a pro rata percentage of 44.02%. (*Id.* at ¶ 16.) Plaintiff asserts that under the Participation Agreement, Defendant must reimburse Plaintiff for the "pro rata share of expenses incurred in enforcing obligations of Beaverdam pursuant to the Note and Deed of Trust and protecting the real property." (*Id.* at ¶ 17.) Plaintiff has sent many invoices to Defendant requesting its reimbursement. (*Id.* at ¶ 18.) Defendant has not reimbursed Plaintiff, a failure that Plaintiff claims breaches the Participation Agreement. (*Id.* at ¶ 19.) Plaintiff claims it is entitled to at least $136,906.61 (44.02% of $310,982.44) plus interest and attorney's fees in both its breach

of contract claim and quantum meruit claim. (*Id.* at ¶ 20 and 25.) Defendant contests the argument that it breached the participation agreement, claiming it has no duty to reimburse Plaintiff under Paragraph 5 of the participation agreement. (Def.'s Mem. Supp. Mot. to Dismiss 1, Docket Entry 10.) Because of this alleged absence of duty, Defendant has moved to dismiss and in the alternative to transfer venue to Florida. (*Id.*)

## II. Standard of Review

### A. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may seek dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the factual allegations must "be enough to raise a right to relief above the speculative level." *Id.* at 555. "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570). As explained by the United States Supreme Court:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

A 12(b)(6) motion tests the sufficiency of a complaint and "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992). Accordingly, a court should "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts. Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). Although the truth of the facts alleged is assumed, courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.* Further, a court should not "conjure up questions never squarely presented." *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Rule 8 does not, however, unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* at 556 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

B. Contract Interpretation[1]

Contract interpretation is a matter of law for the court when the contract language is unambiguous and clear. *Piedmont Bank & Trust Co. v. Stevenson*, 79 N.C. App. 236, 240, 339 S.E.2d 49, 52 (internal citations omitted), *aff'd per curiam*, 317 N.C. 330, 344 S.E.2d 788 (1986). However, when ambiguous language is used, "the intent of the parties is a question for the jury and parol evidence is admissible to ascertain that intent." *Piedmont*, 79 N.C. App. at 240–41, 339 S.E. 2d at 52; *see also Dept. of Transp. v. Idol*, 114 N.C.App. 98, 100, 440 S.E.2d 863, 864 (1994). "Ambiguity exists where the contract's language is reasonably susceptible to either of the interpretations asserted by the parties,"[2] leaving the court uncertain as to which of the meanings is the proper one. *Beacon Wireless Solutions, Inc. v. Garmin Intern., Inc.*, No. 5:11CV00025, 2011 WL 4737404, at *11 (W.D.Va. Oct. 5, 2011). "Clear and express language of the contract controls its meaning." *Paul Revere Life Ins. Co. v. Forester*, 32 F.Supp.2d 352, 355 (W.D.N.C. 1998) (quoting *Olive v. Williams*, 42 N.C.App. 380, 383, 257 S.E.2d 90, 93 (1979)).

In North Carolina, the intent of the parties is inferred from clear and plain language and "the contract must be construed to mean what on its face it purports to mean." *Feldstein v. Nash Cmty. Health Services Inc.*, 51 F.Supp.2d 673, 684 (E.D.N.C. 1999) (quoting *Hartford*

---

[1] Despite the dispute over whether North Carolina or Florida law should govern, this Court will support its decision with local federal and North Carolina law. In any event, most of the precedents cited are generally nationally recognized canons of contract construction.

[2] *Dockery v. Quality Plastic Custom Molding, Inc.*, 144 N.C. App. 419, 421–22, 547 S.E.2d 850, 852 (2001); *see also Glover v. First Union National Bank*, 109 N.C. App. 451, 456, 428 S.E.2d 206, 209 (1993).

5

*Accident & Indem. Co. v. Hood*, 226 N.C. 706, 710, 40 S.E.2d 198, 201–202 (1946)). Unambiguous language will be interpreted as written and enforced according to its terms.[3]

A contract will be construed as a whole and in its entirety,[4] to give effect and meaning to every word, part, and provision. *Estate of Waters v. C.I.R.*, 48 F.3d 838, 844 (4th Cir. 1995) (citing *Centennial Ins. Co. v. Haley Transfer & Storage, Inc.*, 18 N.C.App. 152, 196 S.E.2d 822, 828 (1973). The interpretation is not derived from what separate parts of the contract mean,[5] nor can parts of the contract be "reduced to mere surplusage." *Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1127 (4th Cir. 1993). If the contract contains unambiguous and explicit language, then the court cannot "look beyond the terms to see what the parties' intent might have been." *Estate of Waters*, 48 F.3d at 844 (citing *Rosania v. Rosania*, 108 N.C.App. 58, 422 S.E.2d 348, 350 (1992)).

### III. Analysis

#### A. Breach of Contract Claim

To establish its claim for a breach of contract, Plaintiff must show (1) the existence of a valid contract, and (2) breach of the terms of the contract. *Guessford v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 918 F.Supp.2d 453, 460 (M.D.N.C. 2013) (internal quotation marks omitted). It is undisputed that the Participation Agreement was valid; however, the parties dispute whether Defendant's conduct breached that contract.

---

[3] *Meyn America, LLC v. Omtron USA LLC*, 856 F.Supp.2d 728, 735 (M.D.N.C. 2012); *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978).
[4] *Quorum Health Resources, LLC v. Hugh Chatham Memorial Hosp., Inc.*, 552 F.Supp.2d 527, 532 (M.D.N.C. 2007).
[5] *Quorum*, 552 F.Supp.2d at 532 (quoting *Atlantic & N.C.R. Co. v. Atlantic & N.C. Co.*, 147 N.C. 368, 61 S.E. 185 (1908)).

Plaintiff alleges that the Participation Agreement "requires Defendant to reimburse [Plaintiff] for Defendant's pro rata share of the expenses incurred in enforcing" the loan. (Compl. ¶ 17, Docket Entry 6.) Because Defendant continues to refuse to reimburse Plaintiff for enforcement and protection costs, according to Plaintiff, Defendant has breached the terms of the contract. (*Id.* at ¶ 19.)

In its motion to dismiss, Defendant argues that the Participation Agreement does not require it to reimburse the Plaintiff, because that duty only exists when three elements are met: (1) Defendant's pro rata share is greater than 50%, (2) Defendant requests Plaintiff take action, and (3) Defendant first indemnifies Plaintiff to Plaintiff's satisfaction. (Def.'s Mem. Supp. Mot. to Dismiss 8–10, Docket Entry 10.) Defendant points out that both parties agree that Defendant's pro rata share is 44.02%, and thus could not even trigger the reimbursement requirements set forth in Paragraph 5 of the Participation Agreement. (*Id.* at 9.) Further, Defendant never requested Plaintiff take enforcement or protection action, another element that Plaintiff does not contest. (*Id.* at 10.) And finally, Defendant avers that it did not indemnify Plaintiff prior to Plaintiff taking any enforcement action, nor does Plaintiff even allege that an indemnity agreement existed. (*Id.* at 10.) Because none of the three "trigger points" are met when all are required, Defendant contends it owes no reimbursement duty to Plaintiff, and thus the complaint fails to state a claim upon which relief can be granted. (*Id.* at 9–10.)

Plaintiff counters that Paragraph 5 of the Participation Agreement "is at least ambiguous with respect to these arguments and at most, contrary to it." (Mem. Opp. Mot. to Dismiss 6, Docket Entry 16.) Its argument rests on a unique interpretation of the

contract clause at issue. Plaintiff argues that the one sentence long paragraph 5 can be broken down into three clauses: Clause 1 explaining that Plaintiff "reserves the sole right to enforce" the loan, Clause 2 providing Defendant the right to request loan enforcement if it owns more than 50% of the loan, and Clause 3 "provid[ing] [Defendant] first indemnifies [Plaintiff] to [Plaintiff's] satisfaction against [Defendant's] pro rata share." (*Id.* at 7.) The core of Plaintiff's argument rests on its assertion that it is "reasonable to interpret Paragraph 5 so that Clause 3 could also apply to Clause 1 *without reference to Clause 2*." (*Id.* at 8.) (emphasis added). Pursuant to this interpretation, Plaintiff avers that Defendant "has an obligation to indemnify [Plaintiff] . . . regardless of whether [Defendant's] share is more than 50%." (*Id.*) Plaintiff also argues that "it is completely reasonable" that Defendant's continuous consent to Plaintiff's enforcement actions represented Plaintiff's satisfaction to Defendant's "agree[ment] to indemnify . . . and pay its share" to Plaintiff. (*Id.* at 8–9.) Plaintiff summarizes these "reasonable interpretation[s]" of paragraph 5, arguing that Defendant has a duty to reimburse Plaintiff its pro rata share regardless of the percentage of the share, regardless of the Defendant's consent or request, or lack thereof, and regardless of whether a formal indemnification agreement existed. (*Id.* at 9.) These interpretations, however, are factually and legally unsupportable.

Plaintiff's interpretation of Paragraph 5 is simply untenable. One of the fatal interpretation mistakes Plaintiff makes is ignoring Clause 2. (Pl.'s Resp. 8, Docket Entry 16.) Clause 2 explains how a Participant with more than 50% share of the aggregate loans can request the loaning bank to enforce the loan. (*See* Participation Agreement ¶ 5, Compl., Ex. 3, Docket Entry 6-3.) Two requirements are laid out in Clause 2: the 50% threshold and the

act of requesting. (*Id.*) Clause 3 adds a third requirement to the granting of this right to a Participant: indemnification. (*See id.*) Clause 3 explains how if a Participant with more than 50% of the loan does in fact request the bank enforce the loan obligation, the Participant must first indemnify the Bank, to the Bank's satisfaction. (*See id.*) Ignoring Clause 2 and reading Clause 1 and 3 together as Plaintiff does, contradicts the basic canon of contract construction that contracts should be construed as a whole. *See Quorum Health Resources*, 552 F.Supp.2d at 532. Plaintiff argues that it is reasonable to ignore Clause 2 and still interpret the contract,[6] however, this Court must give effect and meaning to every word, part, and provision. *See Estate of Waters*, 48 F.3d at 844. If Plaintiff's interpretation were to be followed, Clause 2 would be reduced to mere surplusage, a result contrary to ordinary principle of interpretation. *See Goodman*, 7 F.3d at 1127.

Further, Plaintiff's interpretation of Paragraph 5 destroys its purpose, which is to grant a limited enforcement right to a Participant. By disregarding Clause 2, Plaintiff ignores the first two requirements the contract levies on a Participant in order to exercise its right to enforce the loan obligation, and also completely ignores Paragraph 5's endowment of this right. Paragraph 5 grants the sole right to enforce the loan to the bank in Clause 1, but Clauses 2 and 3 provide an avenue for the Participant to make the bank exercise this solely reserved enforcement right, in certain circumstances. In Clause 2, the two requirements for the Participant to be able to make the bank enforce the loan are layered. First, the Participant must own at least 50% of the loan in the aggregate, and second, the Participant must request loan enforcement. (*See* Participation Agreement ¶ 5.) This intuitively makes

---

[6] Pl.'s Resp. 8–9, Docket Entry 16.

sense as a compromise between parties, in that the bank has the main right to enforce the loan, but a Participant who has a majority stake in the loan can request the bank to enforce the loan if and when the bank fails to do so. Plaintiff lends no support to its argument that these requirements are not vital.

Clause 3 further modifies the balance of power between the bank and the Participant, by requiring that the request made by a majority loan-owning Participant to first indemnify the bank to its satisfaction. (*See id.*) Again, it is logical that if a Participant is allowed to force the bank to incur expenses to enforce a loan obligation, then the Participant must first indemnify the bank for its share of the loan. It would be incongruous for the contract to allow a majority loan-owning Participant to make the bank to enforce the loan at its own expense, and likely against its will, so Clause 3 spreads the financial burden onto both the bank and the Participant, according to their pro rata share. (*See id.*) If Clause 3 were not included, a bank would likely never sign a contract that granted all majority loan-owning Participants the right to force the bank to incur expenses on its own when the Participant would be benefiting as well.

Just as Clause 3 is a necessity, so is Clause 2. However, Plaintiff's interpretation ignores Clause 2, which explains the 50% and the request requirement, and attaches Clause 3's indemnification requirement to Clause 1's reservation of the enforcement right to the bank. *See* Pl.'s Resp. 8–9, Docket Entry 16. To say the Participant must always indemnify the bank's enforcement expenses, while completely ignoring how Clause 2 places this burden onto Participants ONLY when they request such enforcement, contradicts the plain meaning of the clauses when read in harmony. Under Plaintiff's interpretation, Paragraph 5

no longer outlines how the Participant can make the bank enforce the loan, but results in the bank retaining the sole right to enforce, provided the Participant indemnify the bank. Plaintiff's interpretation is simply contrary to the intended and clear purpose of the contract as written.

Additionally, Plaintiff's version of Paragraph 5 creates an absurd result. It reads that the bank can only enforce the loan, if the Participant first indemnifies the bank. (*See* Def.'s Reply in Supp. of Mot. to Dismiss 10, Docket Entry 23.) If that were the case, any Participant (since the 50% threshold has been read out by Plaintiff) would be able to prevent the bank from enforcing the loan by refusing to indemnify. Plaintiff's interpretation of Paragraph 5 does not advance Plaintiff's claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Therefore, Plaintiff's claim as to Defendant's alleged breach of contract must fail.

### B. Quantum Meruit Claim

In addition to its breach of contract claim, Plaintiff contends "Defendant is liable to [Plaintiff] in quantum meruit" for its pro rata share of the incurred expenses. (Compl. ¶ 25, Docket Entry 6.) "To establish a claim for quantum meruit, also known as unjust enrichment, a plaintiff must show three elements: (1) plaintiff conferred a measurable benefit to defendant, (2) defendant knowingly and voluntarily accepted the benefit, and (3) the benefit was not given gratuitously." *TSC Research, LLC v. Bayer Chemicals Corp.*, 552 F.Supp.2d 534, 540 (M.D.N.C. 2008). Further, a quantum meruit claim "can only exist in the absence of an enforceable, express contract." *Id.*

Plaintiff admits "an express contract precludes recovery in quantum meruit," but argues that it can plead this as an alternative claim and cites a North Carolina Court of Appeals case in support of this proposition. (Pl.'s Resp. 9–10, Docket Entry 16.) Defendant maintains that a party can only claim quantum meruit in the alternative if that party alleges in its alternative claim that the contract "is invalid because of defects in its formation and performance." (Def.'s Reply Supp. Mot. to Dismiss 10, Docket Entry 23) (citing *Eastway Wrecker Service, Inc. v. City of Charlotte*, 165 N.C.App. 639, 642, 599 S.E.2d 410, 412 (2004)).[7]

The claim of quantum meruit must fail as well. Nowhere in Plaintiff's complaint or briefs is it even alleged that the contract is invalid – a requirement for this alternative claim to stand. Even if Plaintiff did allege that the Participation Agreement contained "defects," Plaintiff failed to allege anything more than conclusory statements about what "measurable benefit" it conferred to the Defendant. Plaintiff merely states in its complaint that it "incurred expense for services provided to benefit the Defendant" and "paid for services to be furnished for the Defendant." (Compl. ¶¶ 22 and 23, Docket Entry 6.) These are the exact kinds of conclusory statements that do not allow the Court to draw "reasonable inferences"[8] about the Defendant's liability, nor does the complaint allege sufficient facts that would move Plaintiff's claim from "conceivable" to "plausible." *Twombly*, 550 U.S. at 570. No facts are pled that would help the Court to understand what benefit came to the Defendant as a result of Plaintiff's incurred expenses. For this reason, Plaintiff's quantum meruit charge cannot withstand a motion to dismiss.

---

[7] Plaintiff bases its argument on this same case as well.
[8] *Iqbal*, 556 U.S. at 678.

### C. Motion to Transfer Venue

Because this Court finds that Defendant's motion to dismiss is meritorious, it is unnecessary to reach the motion to transfer venue.

## IV. Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Defendant's Motion to Dismiss (Docket Entry 10) be **GRANTED** and Plaintiff's complaint be **DISMISSED**.

*/s/ Joe L. Webster*
Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
March 31, 2014

13